**Pamela RECORD, Plaintiff,**

v.

**MILL NECK MANOR LUTHERAN SCHOOL FOR THE DEAF,**
**Defendant.**

**No. 84 C 4264.**

United States District Court,
E.D. New York.

June 25, 1985.

Jose A. Rivera, Brooklyn, N.Y., for plaintiff.

Clifton Budd Burke & DeMaria, New York City (Michele Costanza, Kevin J. McGill, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 2000e(k) (title VII) and under state law for discrimination on the basis of sex in the terms and conditions of employment. The court has jurisdiction under 28 U.S.C. § 1343(4), 42 U.S.C. § 2000e–5(f)(1) and pendent jurisdiction.

The complaint alleges, in pertinent part, that defendant employed plaintiff as an art teacher beginning on March 19, 1979, that plaintiff took a "maternity leave" in January 1982, that while on leave plaintiff informed defendant that she might be pregnant again and would require another leave, and that defendant did not renew her contract claiming that plaintiff had not pursued certification for deaf education in a timely fashion.

The case was tried to the court commencing May 2, 1985. The court makes the following findings of fact and conclusions of law.

Plaintiff began her employment with defendant on March 19, 1982 as an art teacher. To hold the position plaintiff was required under state law to be certified for teaching art and teaching the deaf. Plaintiff had obtained her permanent art certification in 1977 but was not certified to teach the deaf and had taken no courses toward obtaining the certificate.

At the time of her employment plaintiff was informed by Henry Bjorlie, the superintendent at defendant, and Miss Weidner, the principal of defendant, that she would have to pursue courses toward deaf education certification and that they would recommend waiver of the certification requirement for the rest of the year. Plaintiff agreed but said she could not immediately pursue the certificate since she was finishing her thesis for a masters degree in fine arts from Adelphi University. Plaintiff was told that she could receive a waiver of the certification requirement so long as she was pursuing the requirements for certification.

Plaintiff continued to work at defendant during academic years 1979–80 and 1980–81, received waivers of the certification requirement, but took only two sign language classes. Although usually an employee must pursue six credit hours per year of required study toward certification, Bjorlie could recommend waiver as a kind of an initial employment if a certified applicant were unavailable. In November 1981 plaintiff left to have her first baby, using her accumulated sick leave, and began her child-rearing leave in January 1982.

On March 19, 1982, in response to a site review of defendant by the Commissioner of Education, Bjorlie wrote to plaintiff that she was required to be certified under the State Education Laws and that he had no record of course work taken toward certification. He asked her to come in to review her status and time limits for the fulfillment of certification requirements. On May 4, 1982 Bjorlie again wrote to plaintiff informing her that he must seek waiver of certification on an annual basis and that such waiver is seldom renewed after two years. At the time of the request for a waiver the employee must demonstrate an intent to work toward certification at a rate of at least six semester hours per year.

Again he asked plaintiff to come in to see him.

On May 13, 1982 plaintiff met with Bjorlie. She informed him that she would continue to work toward certification. Plaintiff also asked if her leave could be extended another year and Bjorlie agreed. In the fall of 1982 plaintiff took a 3-credit one semester undergraduate course in deaf education at Adelphi University.

In March 1983 Bjorlie wrote to plaintiff asking whether she intended to return in the fall. On April 8, 1983 plaintiff met with Bjorlie and said she was hoping to be pregnant in the fall and requested that her leave be extended so that she would not come back pregnant. Bjorlie said her leave could not be extended but that if she were pregnant when she returned there would be no problem in receiving time off to have the baby. Plaintiff also told Bjorlie that she had taken one course at Adelphi University and would continue to pursue certification. In May plaintiff called Bjorlie and told him she was pregnant.

In a phone call in May or June Bjorlie offered plaintiff a woodworking position which she declined. Bjorlie was willing to offer plaintiff the woodworking position and recommend waiver of certification for two reasons. First, should plaintiff take another leave the woodworking class would be less disrupted than the art class since woodworking was project oriented rather than run on a year-long curriculum. Second, two teachers would need to be shifted if plaintiff took a leave from the art position, since the woodworking teacher—who had replaced plaintiff during her absence—would return to the art position and a new woodworking teacher would need to be hired.

On June 24, 1983 Bjorlie advised plaintiff by letter that her position as an art teacher would not be renewed due to her non-compliance with the certification requirements.

Plaintiff has not shown that defendant's legitimate concern over the disruptive effect of a child-rearing leave on the faculty and students was pretextual. The fact that Bjorlie offered plaintiff a position in the woodworking department raises the inference that plaintiff's failure to pursue deaf education certification would not be an obstacle to employment at defendant. Bjorlie was legitimately concerned, however, about class continuity and faculty reassignment.

There is no evidence that Bjorlie's decision to offer plaintiff the woodworking position and to terminate her were based on plaintiff's desire to take a pregnancy leave. Plaintiff herself testified credibly that Bjorlie said there would be no problem in her leaving to have a baby. The problem of class and faculty disruption was caused by plaintiff's desire to take a leave of absence to raise the child.

Title VII, as amended by the Pregnancy Discrimination Act, does not protect people wishing to take child-rearing leaves as opposed to women wishing to take pregnancy leaves. *See,* Note, *Sexual Equality Under the Pregnancy Discrimination Act,* 83 Colum.L.Rev. 690, n. 2 (1983); Equal Employment Opportunity Commission-Guidelines, 29 C.F.R. § 1604, App. (1984) (Question and Answer 18); 1 A. Larson & L.K. Larson, *Employment Discrimination-Sex* § 38.70–Parental Leave. A disservice is done to both men and women to assume that child-rearing is a function peculiar to one sex. Whether leaves for child-rearing should be protected from employer discrimination, as leaves for jury duty are, is not a question for this court to determine. Plaintiff does not claim that defendant's actions have a disparate impact on women nor that child-rearing leaves are only granted to women.

The court finds that defendant did not discriminate against plaintiff on the basis of sex. The complaint is dismissed with costs. So ordered.