Filed 5/19/25  Lehman v. MediaLab.AI CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TOM LEHMAN,<br><br>　　Petitioner and Appellant,<br><br>　　v.<br><br>MEDIALAB.AI, INC.,<br><br>　　Respondent. | B336814<br><br>(Los Angeles County Super. Ct. No. 23STCP03563) |

APPEAL from an order of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Reversed and remanded with directions.

Ethan Jacobs Law Corporation and Ethan Jacobs for Petitioner and Appellant.

Pessah Law Group, Maurice D. Pessah, and Lilibet M. Behdadnia, for Respondent.

After his employer MediaLab.AI, Inc. (MediaLab) failed to pay arbitration filing fees within 30 days of the due date, Tom Lehman (Lehman) filed a petition to compel arbitration that asked the court to award him all reasonable attorney fees and costs he would incur in connection with participating in the arbitration. The trial court granted the petition but awarded Lehman only the fees and costs he incurred filing the petition itself. Lehman asks us to decide whether this limited attorney fees award was error under a statute that authorizes payment of reasonable attorney fees and costs "related to the arbitration" when arbitration fees are not timely paid by the party who drafted an arbitration agreement. (Code Civ. Proc.,[1] § 1281.97, subd. (b)(2).)

## I. BACKGROUND

When MediaLab acquired Genius Media Group, the company Lehman co-founded, it entered into a post-acquisition employment agreement with Lehman. As part of that contract, the parties agreed to arbitrate any future disputes between them. Under the terms of the arbitration agreement, MediaLab agreed to pay the fees of the arbitrator or arbitration administrator.

A dispute later arose regarding payment of a retention bonus, and Lehman filed a demand for arbitration with JAMS. On June 22, 2023, JAMS emailed MediaLab an invoice for $2,000, which represented the non-refundable filing fee owed to JAMS. The invoice stated, "Payment is due upon receipt." Thirty days later, on July 22, 2023, JAMS sent a "[f]iling fee reminder"

---

[1] Undesignated statutory references that follow are to the Code of Civil Procedure.

2

email to MediaLab inquiring about the payment of the filing fee. Payment, however, was not received by JAMS until July 25, 2023.

### A. Lehman's Petition to Compel Arbitration and Payment of Attorney Fees

After learning from JAMS that MediaLab's payment of the arbitration filing fee had been made more than 30 days after it was due, Lehman petitioned the trial court, pursuant to section 1281.97, subdivision (b)(2), for an order compelling arbitration and payment of all his attorney fees and costs related to the arbitration. Lehman argued MediaLab's failure to make timely payment to JAMS was a material breach of the arbitration agreement and, as a result, MediaLab must pay his reasonable attorney fees for the full arbitration, not just the filing of the section 1281.97, subdivision (b)(2) petition. Lehman also argued, in the alternative, that the court must at least order payment of fees incurred in filing the petition to enforce the arbitration agreement under section 1281.99.[2]

MediaLab opposed Lehman's petition. Because the arbitration, in MediaLab's view, was not stalled and "proceed[ing] apace" after the late payment, MediaLab maintained the petition was "moot." MediaLab also argued there was no material breach

---

[2]    Subdivision (a) of that statute provides a court "shall impose a monetary sanction against a drafting party that materially breaches an arbitration agreement pursuant to subdivision (a) of Section 1281.97 or subdivision (a) of Section 1281.98, by ordering the drafting party to pay the reasonable expenses, including attorney[ ] fees and costs, incurred by the employee or consumer as a result of the material breach."

3

of the arbitration agreement and Lehman had not suffered any adverse consequences, which should preclude any award pursuant to section 1281.99.

In reply, Lehman emphasized MediaLab had disputed entitlement to attorney fees only under section 1281.99 and not pursuant to section 1281.97, which in Lehman's view, was not contingent on either a delay in the proceedings or any prejudice to him. On the narrower, alternative request for section 1281.99 fees, Lehman requested an award of $4,600.20 in fees and costs incurred in filing the petition to enforce the arbitration agreement and supported the request with his attorney's declaration and redacted copies of legal billing statements.

### B.    The Trial Court's Ruling

The trial court held a hearing on Lehman's petition to compel arbitration and payment of fees in March 2023. The appellate record does not include a reporter's transcript of the hearing (or a suitable substitute). The trial court's later-issued written ruling awarded Lehman attorney fees but limited the fee award to those fees Lehman incurred in filing the petition to compel arbitration.

The trial court found MediaLab materially breached the arbitration agreement, but it reasoned Lehman was not entitled to all fees and costs related to the arbitration because MediaLab did not "intentionally fail[ ] to pay arbitration fees to cause delay" and MediaLab's breach resulted in "only a couple-days delay." The court therefore awarded Lehman a total of $4,240.20 in fees and costs, which incorporates a small reduction to the $4,600.20 amount Lehman requested.

4

## II. DISCUSSION

Reversal of the trial court's order is required. Under the plain text of section 1281.97, the drafter of an arbitration agreement materially breaches an arbitration agreement with an employee by failing to timely pay arbitration fees. It is undisputed MediaLab did not pay the initial arbitration fees on time, and Lehman elected the remedy provided by section 1281.97, subdivision (b)(2): "Compel[ling] arbitration in which the drafting party shall pay reasonable attorney[ ] fees and costs *related to* the arbitration" (emphasis ours). Nothing in section 1281.97 makes Lehman's entitlement to fees and costs contingent on the reasons for MediaLab's late payment, the duration of the delay in payment, or the consequences, if any, of the late payment. The trial court erred by relying on those considerations to limit the fees Lehman is (and will be) due.

### A.     *Section 1281.97*

The Legislature and the Governor enacted section 1281.97 as part of Senate Bill No. 707 (2019-2020 Reg. Sess. (Senate Bill 707)). As explained in Senate Bill 707, there was a concern that "[a] company's failure to pay the fees of an arbitration service provider in accordance with its obligations contained within an arbitration agreement . . . hinders the efficient resolution of disputes and contravenes public policy." (Stats. 2019, ch. 870, § 1, subd. (c).) Further, "[a] company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights. This practice is particularly problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes." (Stats. 2019, ch. 870, § 1, subd. (d).)

5

Section 1281.97 provides: "In an employment or consumer arbitration that requires . . . the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date[,] the drafting party is in material breach of the arbitration agreement . . . ." (§ 1281.97, subd. (a)(1).)  As we have already seen, the statute further provides that "[i]f the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may do either of the following: [¶] (1) Withdraw the claim from arbitration and proceed in a court of appropriate jurisdiction.  [¶] (2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration." (§ 1281.97, subd. (b).)

> B.     *Under Section 1281.97, Lehman Is Entitled to His*
> *Reasonable Fees and Costs Related to the Arbitration,*
> *Not Just Fees and Costs Associated with Filing the*
> *Petition to Compel Arbitration*

Under the plain language of section 1281.97, a material breach occurred when MediaLab failed to pay the arbitration filing fees within 30 days of the June 22 invoice.  Once MediaLab materially breached the agreement, Lehman had two options: "(1) remaining in the arbitral forum on the business's or company's dime or (2) treating the arbitration agreement as being rescinded and returning to a judicial forum." (*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 634.)  Lehman chose the former.  As a result, his remedy, as expressly spelled out in the statute, was recovery of his "reasonable attorney's fees and costs related to the arbitration." (§ 1281.97, subd. (b)(2).)  This "related to"

6

language chosen by the Legislature is regularly understood as a broad construction (see, e.g., *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 383; *Williams v. MacFrugal's Bargains - Close Outs, Inc.* (1998) 67 Cal.App.4th 479, 482) and, here, it covers all reasonable fees incurred in connection with participating in the arbitration, not just the filing of a petition to compel arbitration (which is otherwise compensable under the narrower provisions of section 1281.99).

MediaLab concedes "it is undisputed that the arbitration initiation fees were not paid within 30 days of the due date" but nevertheless presents a laundry list of reasons why it should not be required to pay Lehman's arbitration fees and costs: the payment was a "mere two court days" late, which MediaLab categorizes as a "trivial delay" that the Legislature did not intended to prevent; Lehman waited 65 days after the filing fees were paid to bring his petition, during which time he was not subject to any "litigation 'limbo'" due to the late payment; and Lehman did not suffer any economic damages other than the expense of bringing the petition, which MediaLab characterizes as a "self-inflicted" injury.

MediaLab's litany is irrelevant for purposes of section 1281.97 here.  (*Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761, 777 ["the Legislature considered and rejected the argument that section 1281.97 would unfairly penalize drafting parties for minor errors"]; *Williams v. West Coast Hospitals* (2022) 86 Cal.App.5th 1054, 1074 ["To further its stated purpose, the Legislature in enacting section[ ] 1281.97 . . . chose to neither require nor permit an inquiry into the reasons for a drafting party's nonpayment"]; *Doe. v. Superior Court* (2023) 95 Cal.App.5th 346, 357 ["the Legislature established strict breach

7

provisions for nonpayment [under § 1281.97] that did not involve any inquiry into the intent or good faith of an employer or the reasons for nonpayment. *Any* untimely payment constitute[s] a material breach regardless of the circumstances or status of the arbitration proceedings"].) The only relevant inquiry is whether the arbitration initiation fees were paid on time. They were not. That triggered a statutory obligation to cover Lehman's arbitration-related fees and costs, an obligation the trial court should have "strictly" upheld. (*Espinoza, supra*, 83 Cal.App.5th at 776.)

MediaLab's brief can also be read to suggest Lehman's petition was procedurally defective. Because the conduct of the arbitration was not significantly delayed by its late payment of the initiation fees, and because Lehman in his opening brief on appeal states his petition sought to "continu[e] in arbitration," MediaLab implies Lehman should have brought his petition pursuant to section 1281.98, not 1281.97.[3] Insofar as the argument is adequately presented, it would appear to be

---

[3] Section 1281.97 addresses the failure to timely pay fees or costs to "initiate" an arbitration (§ 1281.97, subd. (a)(1)) and section 1281.98 addresses the failure to timely pay fees or costs to "continue" an arbitration (§ 1281.98, subd. (a)(1)). Section 1281.98, unlike section 1281.97, does not automatically grant an employee or a consumer its arbitration-related fees and costs in the event he or she continues the arbitration following a material breach by the drafting party. But it does require an arbitrator to impose monetary or other sanctions on the drafting party (§ 1281.98, subd. (d)) and it allows an employee to withdraw from the arbitration and bring a motion to recover all attorney fees and costs associated with the abandoned arbitration proceeding (§ 1281.98, subd. (c)(1)).

8

inconsistent with the record (the unpaid JAMS June 22, 2023, invoice was for what MediaLab calls the "initiating fees for the arbitration" first demanded on June 6, 2023). But the real problem with the argument is that the record reveals it was never made to the trial court. It is therefore forfeited. (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143; *Vallejo Police Officers Assn. v. City of Vallejo* (2017) 15 Cal.App.5th 601, 621.)

## DISPOSITION

The trial court's March 21, 2024, order is reversed and the cause is remanded with directions to enter an order granting Lehman's request for reasonable attorney fees and costs related to the arbitration and to hold such further proceedings as necessary and not inconsistent with this opinion. Lehman is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM (D.), J.

9